[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS (# 101)
This action arises out of a slip and fall. On May 11, 2000, the Plaintiffs, Juan Sanchez, Jr., and Juan Sanchez, Sr., brought this action against the Defendants, Capitol Region Education Council (CREC) and the Greater Hartford Academy of Arts (Academy). The Plaintiffs allege that on May 12, 1998, Juan Sanchez, Jr., was injured when he slipped and fell on a walkway that connected to the parking lot of 235 Wethersfield Avenue, over which CREC was in possession and/or control.
On September 5, 2000, the Defendants moved to dismiss this action for lack of subject matter jurisdiction under the doctrine of sovereign immunity. A motion to dismiss is the procedurally proper method to raise the issue. Practice Book § 10-31 and § 10-33. In addition, the Academy moves on the ground that it has no legal existence and therefore any action against it is void ab initio. Attached to the motion are the affidavit of George Synodi, Chief Financial Officer of CREC, dated August CT Page 5019 29, 2000, (Synodi Affidavit), and the constitution of CREC. On October 11, 2000, the Plaintiffs filed an objection to the Defendants' motion to dismiss. The matter appeared on the March 26, 2001 short calendar and counsel for both parties appeared.
 DISCUSSION
In ruling on a motion to dismiss, the court must construe the facts alleged in the complaint, including those necessarily implied from the allegations, in a manner most favorable to the plaintiff. Pamela B. v.Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Figueroa v. C S BallBearing, 237 Conn. 1, 4, 675 A.2d 845 (1996). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.)Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991) The doctrine of sovereign immunity provides that the state is immune from suit unless it consents to be sued. White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195
(1990). It extends to negligence actions against individual state officials and employees acting within the scope of their authority. General Statutes § 4-165; Horton v. Meskill, 172 Conn. 615, 623,376 A.2d 359 (1977). "Sovereign immunity may be waived only through a statute." Struckman v. Burns, 205 Conn. 542, 558, 534 A.2d 888 (1987). "Any statutory waiver of immunity must be narrowly construed." Id.
The Defendants argue that the state is immune from suit unless it consents to be sued pursuant to the doctrine of sovereign immunity. The Defendants argue that CREC is a regional educational service center (RESC) created pursuant to General Statutes § 10-66a et seq., and that therefore, as an agent of the state, CREC is immune from this action. Furthermore, the Defendants argue that pursuant to General Statutes § 4-141 et seq., an individual seeking redress against the state under the theory of common-law negligence must file their claims with the Connecticut claims commissioner and that the Plaintiffs have failed to do so.
The Plaintiffs rely on statutory construction for their arguments. The Plaintiffs argue that pursuant to General Statutes § 10-66c (a) CREC is a "body corporate and politic. The board of a regional educational service center shall be a public educational authority acting on behalf of the state of Connecticut and shall have the power to sue and be sued. . . ." Therefore, the Plaintiffs contend that sovereign immunity has been waived via the statute.[1]
CT Page 5020
Therefore, the first issue before this Court is whether CREC is protected by the doctrine of sovereign immunity. The only case found in which the immunity of a RESC has been discussed is Pompoukidis v.Education Connection, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 335425 (October 1, 1998, Melville, J.). InPompoukidis, the plaintiff filed a complaint against a RESC alleging that her daughter suffered injuries while attending a RESC program. Judge Melville held that the RESC was "an agent of the state, and therefore may raise the defense of sovereign immunity" and granted the defendant's motion to strike. Similar to the case at issue, the defendant RESC inPompoukidis submitted a copy of its constitution in support of its motion to dismiss which provided that it "shall be established as a regional educational service center in accordance with Section 10-66a through 10-661 of the General Statutes of the State of Connecticut."
In the present case, the Defendants have submitted a copy of their own constitution which provides: "The Council is a public educational authority acting on behalf of the State of Connecticut." In addition, Synodi attests that "CREC is and has always been a public educational authority acting on behalf of the State of Connecticut." (Synodi Affidavit, ¶ 6.)
This Court finds that as a RESC, CREC is a state actor. As a state actor, CREC is shielded by sovereign immunity unless it is waived.Lacasse v. Burns, 214 Conn. 464, 468, 572 A.2d 357 (1990). As agents of the state cannot be sued without consent, this Court will not have subject matter jurisdiction over the claims against CREC unless sovereign immunity has been waived. Cahill v. Board of Education, 187 Conn. 94,101, 444 A.2d 907 (1982) (sovereign immunity has been extended to state agents acting on its behalf.)
Judge Melville's opinion in Pompoukidis did not address the precise issue faced by this Court, which is whether the language in § 10-66c
(a) granting CREC "the power to sue and be sued" constitutes a statutory waiver of sovereign immunity. "Our analysis is more specifically illuminated by the well settled principle that when the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed. . . . Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed CT Page 5021 by the use of express terms or by force of a necessary implication." (Internal quotation marks omitted.) Dept. of Public Works v. ECAPConstruction Co., 250 Conn. 553, 558-59, 737 A.2d 398 (1999); see alsoStruckman v. Burns, 205 Conn. 542, 558, 534 A.2d 888 (1987). When the legislature intends to waive sovereign immunity, it does so by express language authorizing suits against the state. See, e.g., General Statutes § 4-61 (authorizing actions against state on highway and public works contracts); General Statutes § 13a-144 (authorizing actions for defective highway); General Statutes § 52-556 (authorizing actions against state for negligent operation of state owned vehicle).
This Court finds no express language in § 10-66c that indicates a clear intent by the legislature to waive sovereign immunity. Furthermore, there is no explicit language authorizing a suit against the state anywhere in the statutory scheme creating and empowering RESCs. Contrary to the Plaintiffs' contention, the power "to sue and be sued" cannot be construed as synonymous with consent to be sued and therefore this language cannot and does not effectuate a statutory waiver of sovereign immdnity.
Instead, the remedy available to plaintiff's wishing to present a claim against the state in situations where sovereign immunity has not been waived is via the Office of Claims Commissioner. General Statutes §4-147. General Statutes § 4-148 (a) provides in pertinent part that "no claim shall be presented under this chapter but within one year after it accrues" except as provided in subsection (b). If the Plaintiffs fail to meet the requirements of § 4-148 (a), they may be able to avail themselves of the provision of § 4-148 (b). See Chotkowski v. State,240 Conn. 246, 253, 690 A.2d 368 (1997). Subsection (b) provides: "The General Assembly may, by special act, authorize a person to present a claim to the Claims Commissioner after the time limitations set forth in subsection (a) . . . have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose." The Plaintiffs having failed to follow the statutory route of obtaining consent to sue, the Court lacks subject matter jurisdiction over the action against CREC.
The final issue before this Court is whether the Academy is a separate legal entity from CREC.[2] The Academy argues that it is not an independent legal entity but instead a program operated by CREC, and, therefore cannot be sued as it is a nonentity. The Plaintiffs argue that the Academy is amenable to suit as a legal entity and is not protected by sovereign immunity.
"It is elemental that in order to confer jurisdiction on the court the CT Page 5022 plaintiff must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to sue." (Internal quotation marks omitted.) Isaac v. Mount Sinai Hospital, 3 Conn. App. 598,600, 490 A.2d 1024, cert. denied, 196 Conn. 807, 494 A.2d 494 (1985). Entities without a legal existence cannot be sued or sue. Id.; see alsoGMA Yacht Sales v. Skagit Maine Distributing, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 364155 (September 7, 2000, Skolnick, J.) (28 Conn.L.Rptr. 227). Synodi attests that "[t]he Academy is not and has never been a legal entity in and of itself, but is only the name for a program run by CREC." (Synodi Affidavit, ¶ 8.) Synodi continues that "[t]he Academy is not and has never been a corporation, partnership, natural person or other legal entity" and that it "has never had a legal existence apart from CREC." (Synodi Affidavit, ¶ 9 and ¶ 10.) The Plaintiffs fail to produce any documentation to the contrary. Thus, the Court finds that the Academy is not a legal entity capable of being sued.
The Defendants' motion to dismiss the complaint is granted.
David L. Fineberg Superior Court Judge